This is our first case of the afternoon. People of the State of Illinois v. Richard Lewis. For the appellant, Ms. Weck. Is that the right pronunciation? And for the appellee, Ms. Brooks. You may proceed. May it please the court. Good afternoon. Again, my name is Kathleen Weck from the Appellate Defender's Office representing Mr. Richard Lewis. I plan to focus mainly on Arguments 2 and 3. These two alternative due process arguments raised in the briefs. And I will explain how this court's recent decision in People v. Laws specifically applies to my first due process argument. But I will, of course, address your questions on any of the other issues raised in the briefs. First, Mr. Lewis' conviction under Section 646-120 of the Criminal Code violates the Due Process Clause because it does not require proof of a criminal mental state and can punish innocent conduct. As discussed in the briefs, the purpose of this statute is to make it more difficult for prior offenders to get the ingredients used to make methamphetamine. But the statute is overbroad because it can punish the entirely non-criminal conduct of buying or possessing a decongestant to treat a head cold. This argument differs from the one made in Laws because in that case, the defendant was trying to preserve the constitutionality of the statute by requiring that a conviction be accompanied by a criminal mental state, i.e. knowingly purchasing, receiving, owning, or possessing the precursor with the culpable purpose of diverting it to manufacture meth. But here, though, Lewis is arguing that the statute is facially unconstitutional, it is overbroad, punishes innocent conduct, just using it to treat medical symptoms, and fails the rational relationship test. Because the statute does not require the prior offender to have a criminal purpose when he buys or possesses the precursor without a prescription, a person with a prior meth conviction faces this felony conviction and a minimum one-year prison sentence for possession with the intent to treat medical symptoms of himself or others in his household. This court expressly held in Laws that it was not reaching this issue, although it was raised at the trial court level, because the public counsel had forfeited the argument on appeal. And so, therefore, we are now asking this court to address the constitutionality of the statute in Lewis' case. We acknowledge that the statute already contains a mental state of knowingly, so this case does not fall under the parameters of a case like Tolliver that was relied on by appellate counsel in Laws, in that there is a mental state of knowingly possesses, owns, receives, acquires the precursor, but without a criminal purpose to divert it to meth production. There is no reasonable relationship between the statute, whose purpose is to make it harder to get the precursor to make a methamphetamine and the defendant's conduct of possessing any amount of a decongestant that contains ephedrine or pseudoephedrine. Is it a legitimate aim of the statute to try to impact a certain class of people who may have shown a proclivity toward using these ingredients to make methamphetamine? Well, Your Honor, it covers anyone with a prior conviction under the Methamphetamine Community Control Act. So, for that matter, it might have been from a person with a prior conviction of making meth, or being involved with others who made meth, or from possessing methamphetamine. And maybe you've had no ever, in the background, maybe you never had diverted a precursor to make meth. So, it is targeting people with prior offenses. True. That's the class. But the fact that this statute is a felony distinguishes it from, I believe, Justice Knecht, you were also the justice who wrote Willner, that was addressing the other misdemeanor statute, which I'm also open to discussing here, 648-20, where it was only a misdemeanor offense, and you found it to be a rational relationship between the prohibition against anyone with a prior offense for anyone purchasing more than 7,500 milligrams of a precursor within a 30-day period. There, the offense was rationally related to the purpose of keeping people from acquiring a precursor to make methamphetamine, whereas here, a person runs afoul of this law, even when they possess a single pill that they've taken and consumed. Technically, they possessed it, they consumed it, and they still face this felony conviction, a nonprobationable felony conviction. From that level, it's a very overbroad statute. An instructive case is Carpenter, which this court noted in laws was the case that should have been relied upon for the defendant's argument in laws. Because in Carpenter, the offense was knowing that there was a secret compartment in a motor vehicle, and Carpenter pointed out that the person could knowingly possess the motor vehicle that contained this secret compartment, but have no intent to be hiding something particularly in there from law enforcement. You know, like a weapon or drugs, which is what the whole purpose of that statute was. So here, we're asking this court to find that 646-120 is unconstitutional on due process grounds, because it is not reasonably designed to achieve the purpose of keeping prior offenders from getting the precursor in order to manufacture meth, because it's overbroad and potentially punishes this innocent conduct of consuming for health purposes, or even, as I said, someone could be running afoul of it if the police go into the house and find a package of it in their medicine cabinet. Our second due process argument, which was argument three in the briefs, is that 646-120 is an arbitrary and irrational statute, because it carries a much greater penalty than the other statute, 648-20 and 40, in the Methamphetamine Precursor Control Act, which carries the same purpose of deterring the manufacture of meth by prior offenders. When the two statutes are compared, the more culpable conduct, acquiring more than 7,500 milligrams within a 30-day period, which obviously is more likely to be diverted to the manufacture of meth, carries only a Class B penalty when a prior offender under any state jurisdiction with a methamphetamine prior offense does this conduct. It's a very broad statute carrying a much lower penalty. As we noted in the briefs, the scheme is substantially similar to the schemes at issue in the Illinois Supreme Cases of Wagner and Bradley, in where the more culpable conduct carried the lesser penalty. Here, the possession of one pill of pseudoephedrine by a prior offender is a Class IV with a mandatory prison sentence, while the purchase of 7,500 milligrams or more by a prior offender is a Class A misdemeanor under the 648-20 and 40. Alternatively, Mr. Lewis asked this Court to strike down 646-120 as unconstitutional under the Due Process Clause because it's an arbitrary and irrational when compared with this Misdemeanor Methamphetamine Precursor Control Act statute, or because it's not a rational means under the Substance of Due Process Clause to target the purpose of the statute. In the drug cases, the sale of drugs, while the sale of the drug is not wholly innocent conduct, it is totally innocent and annoying that you're too close to a church or too close to a school, and yet we elevate the punishment. Now, that's not the same thing as the difference between a felony conviction and a misdemeanor conviction, but to a defendant, that could be an extraordinary detriment to what they face before the court, and yet the purpose of the law is to prevent the sale of a narcotic close to a school or a church, and we don't care whether the defendant knew that he was selling close to a church or a school. Now, that's not entirely analogous, but it's part of a public policy that sometimes the things that you do have greater consequences because of what you've done before or where you do it. How does that, or the sex offender who doesn't know, he goes to a fenced-in dog park, and it just happens that it's adjacent to a playground. It may be wholly innocent conduct, conduct that's not prescribed by anything other than the fact that he's a sex offender, so he bears consequences that may be totally unrelated to why he was there, just as this gentleman bears consequences because his ability to possess even a single pill is restricted because of prior behavior. I mean, isn't that all part of a grander scheme that may not run afoul of the Constitution? Or at least it hasn't in other instances regarding the sex offenders and the drug sales. Well, with the sex offender in the playground area, clearly the purpose of it, I'm assuming this applies to child sex offenders, I believe, not someone who had an adult sex offender. I don't know what the game's limitations are. So, it's rationally tailored to protect children from people with prior sex convictions, child sex convictions, from being around children where they may be harmed. Well, we don't want this guy to be around meth, because it may be bad for him, separate and apart from using it to create something else. Or we don't want him to be around meth precursors. I think the issue here is that it's a methamphetamine precursor, is a Schedule V drug controlled substance, which means it has low potential for abuse, it has medicinal purposes. So, here we're talking about something that is not inherently dangerous in and of itself, like an illegal heroin or... Well, it's not inherently dangerous that the offender goes to the dog park. This may be the most perfect probationer or the most perfect offender, totally reformed, and he goes to the dog park. We say, we don't care. We don't care. You can't go there. You can't even go there if the playground is on the other side of a building, and you couldn't tell, you couldn't see the playground, and yet you would be held to that standard if the state certainly chose to charge you or revoke. Well, I believe this probably has been challenged by someone with a sex offense, perhaps, on those grounds, but looking at it here, we're talking about the purpose of the law, 646-120, is to keep people from getting the ingredients to make methamphetamine. But we're talking about, it's not rationally, there's not rationally tailored when he doesn't have a criminal purpose to use this product. So, from that standpoint, I understand your point of comparing it to, we don't know what the purpose of this man in the dog park is. We don't know what the purpose of the guy that's selling drugs, either. He's not trying to sell it to a child or a church member. He's selling it to one of his popes. It just happened, and it's two blocks away. The problem is that this statute does not even, there's already this statute that prohibits someone from getting more than 7,500 milligrams in a 30-day period, which is clearly, as discussed in Willner, a much more rational way to stop the harm, which is to stop the production of methamphetamine. Whereas here, we're talking about someone with a decongestant pill in their house, with a felony. So, this, from a due process standpoint, is just not a rational statute. And it's also, I don't necessarily want to get into the other one's arguments in the brief, but when we also look at it, the misdemeanor offense applies to anyone from any jurisdiction with a prior methamphetamine-related offense. So, that again is rationally tailored to, if you say we're just going to like, you know, we're not going to classify people. We're just going to say anyone with a prior methamphetamine offense from anywhere cannot get 7,500 milligrams or more. This is going to apply, and it's going to be a misdemeanor. You're not going to go to prison for this. Whereas here, we're just targeting specifically in 646.120, people with prior convictions under the MCCPA in Illinois. So, it's only applying to a very small class of prior offenders, whereas the misdemeanor applies to a broader range of people. So, we're just targeting why one might ask, are prior offenders with this Illinois meth who might have just bought some meth and been, you know, convicted of just having some meth, why are they kept from getting a cold decongestant pill? From that standpoint, this is just such an overbroad statute and is not rationally related to the purpose of the statute. Do you honors have more questions? Thank you very much. We ask you to find that this statute is unconstitutional. Thank you. Good afternoon, your honors. My name is Allison Page Brooks. I represent the people in this case. May it please this Court. First of all, I would like to address the defendant's challenge to the sufficiency of the evidence because that is a threshold issue before this Court can reach the question of the constitutionality of the crime. The defendant's claim is that the State failed to prove that he knew that pseudoethadrine was a meth and betamine precursor and State cited Section 4-3 subsection C of the Criminal Code and that provision says that knowledge of the existence, meaning, or application of a statute defining offense is not an element of the crime. So, the defendant's claim is that it is an element that he must know the statutory definition of Section 10 of the Methamphetamine Control and Community Protection Act. Section 120 of the offense in which he was convicted refers to Section 10 specifically. Section 10 defines methamphetamine precursor to include pseudoethadrine, among other substances. So, the defendant's crime was possessing a product containing pseudoethadrine without a prescription. It says methamphetamine precursor as defined in Section 10. Section 10 refers to pseudoethadrine. So, he is essentially now arguing that the State failed to prove his knowledge of the law, which, of course, because Section 120 does not clearly define knowledge of the law as an element, Section 4-3C's rule does apply. Ignorance of the law is not a defense and his argument for insufficiency of evidence should be rejected. Instructed is this case in this Court's decision in Mattel. The question there was whether he knew that the substance, quote, Bulldog contained AM-2201. A law had defined AM-2201 as a controlled substance. So, the question was not whether he knew that AM-2201 was a controlled substance, because that was a question of law. So, the defendant's reply and main brief attempts to characterize the question of whether pseudoethadrine is a methamphetamine precursor is a question of fact that has to be proved with evidence. It's not. It's a statutory definition, so the defendant's knowledge of the law does not matter. So, with respect to substantive due process, the question is whether there's a reasonable relationship to the public interest here, which is preventing diversion of precursors towards manufactured methamphetamine. Is this a reasonable method of furthering that public interest? Those are the questions. And there is a rational basis here, because this is the most workable, easily enforceable mechanism of preventing those people who have histories of prior convictions that make them the most likely people to divert any amounts of pseudoethadrine towards illicit manufacture of methamphetamine from obtaining it without a prescription. So, in other words, if they don't get a prescription, the presumption is that they are intending on diverting. They could get a prescription if they really needed it, in other words, but they don't have a prescription, so therefore they are going to divert. That is a reasonable judgment for the legislature to make in passing this law. And essentially what this defendant's argument is that he disagrees that this conduct, which has been identified by the legislature, should be criminal. He says it's innocent conduct. The legislature says no, it's criminal conduct. He disagrees. He's going to lose that question because people in the state of Illinois, through their elected representatives and general assembly, get to decide what is innocent and what is criminal. They said that this specific conduct is criminal. He committed this crime, and it is a crime. And so, essentially, the only way this type of substantive due process argument comes up in the cases is typically when the legislature passes a crime that prohibits a certain amount of conduct, but doesn't really mean to prohibit that amount of conduct. So they didn't really mean to pass the law, but they end up criminalizing a whole bunch of other stuff that they didn't mean to criminalize. That is not what happens here. What happens here is that a person with this criminal conviction history possesses pseudoephedrine in any amount without a prescription. That's the crime. That's the only crime, and that's exactly what the legislature intended to do. So, therefore, all the other cases dealing with substantive due process are irrelevant. They don't apply here because those are situations the legislature criminalized way too much more than they meant to. Here, it's exactly the same, just like the Williams case, the unidentified sound recordings case cited in the brief. The statute captures the exact same conduct that the legislature meant to penalize. So, therefore, innocent conduct in this situation refers only to conduct not germane to the harm identified by the General Assembly. It has to be wholly related to the purpose. Well, here there's no wholly unrelated conduct that would be wholly unrelated to the purpose of preventing diversion of pseudoephedrine. In other words, the defendant says, well, what if he has a single pill in his house? Well, first of all, this statute prohibits possession. To have an act of possession, it has to be voluntary. The defendant has to know it's there. He has to voluntarily have an act of possession. So, if someone else in his house had it, but he doesn't have his own prescription, he's not guilty of this crime unless he actually possessed it. What about all these drug cases about, you know, constructive possession? It's under the passenger seat. It's not under my seat. It's, well, I was just staying there that night with my girlfriend. I didn't know what all that stuff on the dresser was. But it still does not solve the state of the burden. In the first instance in the circuit court, at a trial, to prove beyond a reasonable doubt, the defendant voluntarily possessed it. The remarks in a court of review, for example, about constructive possession are usually related to affirming convictions after that showing had been made to say that that was part of what it means to possess something. And it can be constructive. It doesn't have to be in the person's own pocket, for example. So, if someone's husband, for example, a woman's husband had a prescription for hydrocodone, but she doesn't have a prescription for hydrocodone. He brings it into their house. Is she guilty of the crime? No, because she's not possessing that. So, this is sort of like the same situation, too. If one person in the household is a felon and can't possess a firearm, someone else in the house does have a legal right to possess a firearm in the home. But isn't it a little different to use the example of a prescription? You know, generally, a prescription isn't required for this. So, are we going to be dealing with you had access to it. You did constructively possess it because you had access to it. If it's access, well. Doesn't that usually play into an analysis of whether or not you constructively possess it? It can. It can. But then an arrangement could be that, for example, if a woman keeps a purse in her home, if the husband has a prior conviction, she can keep that pseudoephedrine in her purse. I'm thinking about the medicine cabinet. The medicine cabinet. Right. Because you share a bathroom with people in your home and it's there. Do all of you possess it? Well, it would be better for the people to organize their conduct in such a way so as to make it, prevent that person from obtaining access to the substance which he is not allowed to possess. If he wants to stay on the right side of the law and doesn't want to get prosecuted and trapped in a situation where the state might charge him, might argue constructive possession, if he does something to ensure that he doesn't have access to it, like, for example, if someone has, like, a lockbox, an inexpensive lockbox with a key, they could keep that pseudoephedrine in there, keep the key, and not give their partner or other roommate access to that substance. That could be something that people could do to organize their affairs. But that doesn't mean that it's irrational for the legislature to prohibit someone from actually possessing something. So this is the most workable method. Even if it is a single pill cannot be effectively diverted towards methamphetamine manufacture, if the legislature were to make some other limit, for example, say you cannot possess more than 1,000 milligrams at any time, what's to stop a person then from taking that 1,000, diverting it, then going back and getting another 1,000 and diverting that, et cetera? In other words, no amount the legislature could have fixed here is going to be effective in accomplishing the goal. This is the most reasonable method or a reasonable method, and this court doesn't have to pass on the wisdom of what the legislature decided to do. It just has to really decide, is this a rational method of accomplishing its objective? And so the defendant claims that this is for treating medical symptoms. But, yes, it is a Schedule V controlled substance, which means it's highly regulated. One cannot simply go to a friend or neighbor or coworker and say, can I have a pseudoephedrine, and they can't get it from them. The law says you cannot get it that way. You have to go through the pharmacy, for example, and sign the log. It's highly regulated. So what the defendant says in their brief about that is not at all innocent conduct. In fact, it's actually already illegal, even without Section 120. So one thing to think about, too, under substantive due process, is what if the legislature just simply said that this is Schedule V controlled substance. We're going to make it illegal for everyone in Illinois to possess this. But they didn't. They instead realized that this is something that some people use. So they permitted, as a matter of legislative grace, under a highly regulated system, people to obtain it without prescription in limited amounts, except for people who have histories of convictions under the Methinfemine Control and Community Protection Act. Those people we don't trust with this at all. So that's reasonable to do. The legislature could have made this a class for felony for anybody to possess at all in any amount without a prescription. They didn't do that. They gave space for some people to do this and other people not. And that's reasonable classification under an Equal Protection Clause. And the fact that there is a separate scheme that they cite, and the defendant cites in their brief, which is the Methamphetamine Precursor Control Act, which applies to everybody. And, of course, there's some increase in penalties if someone has a methamphetamine-related conviction. But that's a companion scheme. And that is a different form of regulation. And under the Wade case, it's possible to have different punishment for separate offenses based on the same facts, or the same act. And under the Sethis case, it's possible to have two separate offenses with differing penalties based on the same conduct. That does not violate substantive due process when it challenges the class for felony penalty. And under the Proportionate Penalties Clause, which they haven't addressed at the argument, but they rely on in their brief, there is some level of overlap here. And, in fact, the defendant's claim is to say that it is possible for one person with a prior MCCPA, prior conviction, to go and advise over 7,500 milligrams of controlled substance in 30 days without a prescription and violate both laws. But that's not at all how the Proportionate Penalties Identical Elements Test works. You have to look at the actual elements of the crimes. And here there's extra elements. One has to say you cannot have a prescription. The other one has an amount element that has to be over 7,500 milligrams in 30 days. MCCPA only prohibits, actually prohibits possession, whereas the Precursor Control Act does not prohibit possession. You can possess as much methamphetamine, or, I'm not, sorry, methamphetamine, as pseudo-ethadrine as you want under the MPCA, as long as you don't acquire too much in the 30-day period. It doesn't prohibit you from stockpiling it, and that's one difference is that the, he's convicted of an offense involving possession of pseudo-ethadrine. The Precursor Control Act doesn't prohibit anyone from possessing pseudo-ethadrine. So it only regulates purchase, receive, and acquisition. So these are totally different crimes. They can't really be compared in terms of the type of, the schemes are companion schemes, but they're really targeting different conducts, and they do have different purposes. So with that respect, the State urges this Court to find that the charge was proved beyond a reasonable doubt, and the offense is constitutional, and I would entertain any questions you would have. No questions, thank you. Thank you, Your Honor. I'm going to request a referral. Rebuttal. Ms. White, could you address the 4-3C argument? I know in your reply brief you think it doesn't have any application. Can you remind me what this 4-3C is? Oh, okay. That's the one that Ms. Brooks just argued in the sufficiency of the evidence portion. So in other words, knowledge that certain conduct constitutes an offense or the application of the statute defining an offense is not an element of the offense. Do you mean in laws, the argument that was addressed about the sufficiency of evidence? Right. Okay, so I understand that, Justice Connick, that you wrote laws and that you found that you compared the situation to Ivy with the sawed-off shotgun kind of situation and said that all that the defendant, although the State has to prove, is that he knowingly possessed the substance, and he didn't have to know the illegal nature of the substance he was possessing. Our position, as we said in the reply brief, is that knowledge goes to, when it's at the start of the statute like that, goes to all of the elements that must be proven. And here we're saying he has to have knowledge of possession or purchase and also knowledge that it's a methamphetamine precursor. So I understand Patel had this holding that if the defendant in that case had known that he possessed this AM, the substance, that would have been enough to prove his knowledge. Here we're saying there was no proof. I mean, the statute says, must not buy, own, receive, possess a methamphetamine precursor. So my position is that it's not so much a mistake of law as a mistake of the fact. Does he know that the fact that this product he is buying is a methamphetamine precursor? Isn't there part of the statute that defines methamphetamine precursor includes pseudoephedrine? It does. It does. So this is kind of a hybrid situation, really, because he has to know the fact of what it is. I would still insist that this is really not so much a myth. He may know the law that it's illegal to possess a methamphetamine precursor, but does he know what he has? Because what he has is pseudoephedrine. So that in and of itself is not a methamphetamine precursor. It's a substance that's used to treat medical symptoms. The fact is that it can be diverted into the production of methamphetamine. It can serve as a precursor. So could a bottle of, I guess, ammonia and other things that people use to make methamphetamine. Those are also not just what they are, but they're also something else. So our argument is that he doesn't have the conscious awareness of the facts. Now, in Ivey, which was relied on this argument in laws, you said that, compared it, the defendant could be convicted even if he did not know the gun he possessed was a sawed-off shotgun. Because in Ivey, the public court said that sawed-off shotguns are inherently dangerous and illegal per se. So it was enough that he acknowledged that he dispossessed the gun in question. But here, pseudoephedrine is not illegal per se. It's only illegal per se when it becomes diverted as a precursor into methamphetamines. We're saying... But has the legislature decided that it's inherently dangerous when it is possessed by someone who has previously been convicted of? Well, ironically, there's this big, I don't know that it's so much an element of the offense, the whole prescription, as counsel said, for the proportionate penalties, because it seems like it might be treated more as an exception rather than an element of the crime. So they've allowed for this exception for a prior offender with the prescription, yet have overlooked the glaringly obvious problem that even with the prescription, that person may have no intent of using it to treat cold symptoms, may have the intent to still divert it to methamphetamine production. So this seems a little bit adding to the irrationality of the whole scheme here, where really the purpose of it all is to prevent someone from diverting this precursor into making meth. So there's this, you know, the prescription loophole, but that just adds to the irrationality of what's going on here, where they want to just slap a prison sentence on someone who may have completely harmless purpose of using it to treat colds and just happens to have it in their medicine cabinet at the home and very well could get charged with constructively possessing anything found in his house. So for these reasons, we ask this court to grant Mr. Lewis their plea peace. Thank you. Thank you, counsel. We'll take the matter under advisement. We'll wait until the next case.